UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| VERNON DECK,<br><br>        Plaintiff,<br><br>   v.<br><br>WELLS FARGO BANK, N.A., et al.,<br><br>        Defendants. | No. 2:17-cv-0234-MCE-KJN PS<br><br>ORDER AND<br><br>FINDINGS AND RECOMMENDATIONS |

INTRODUCTION

Plaintiff Vernon Deck, who proceeds without counsel, initially filed this action on February 2, 2017, and requested leave to proceed *in forma pauperis*. (ECF Nos. 1, 2.)[1] In short, this is a mortgage foreclosure case in which plaintiff alleges various violations of the California Homeowner's Bill of Rights and the federal Fair Debt Collection Practices Act ("FDCPA"), and also brings claims for fraudulent misrepresentation, quiet title, and declaratory judgment. Plaintiff's claims are asserted against defendants Wells Fargo Bank, National Association, as Trustee for Option One Mortgage Loan Trust 2003-1, Asset-Backed Certificates, Series 2003-1 (the present owner of the loan); Ocwen Loan Servicing, LLC (the loan servicer from February

---

[1] This action proceeds before the undersigned pursuant to Local Rule 302(c)(21).

1

2013 until April 2017, when non-party Nationstar Mortgage apparently took over servicing of the loan), and Power Default Services, Inc. (the trustee under the deed of trust).

Plaintiff's complaint is subject to screening in accordance with 28 U.S.C. § 1915. Pursuant to 28 U.S.C. § 1915, the court is directed to dismiss the case at any time if it determines that the allegation of poverty is untrue, or if the action is frivolous or malicious, fails to state a claim on which relief may be granted, or seeks monetary relief against an immune defendant.

A federal court also has an independent duty to assess whether federal subject matter jurisdiction exists, whether or not the parties raise the issue. See United Investors Life Ins. Co. v. Waddell & Reed Inc., 360 F.3d 960, 967 (9th Cir. 2004) (stating that "the district court had a duty to establish subject matter jurisdiction over the removed action *sua sponte*, whether the parties raised the issue or not"); accord Rains v. Criterion Sys., Inc., 80 F.3d 339, 342 (9th Cir. 1996). The court must *sua sponte* dismiss the case if, at any time, it determines that it lacks subject matter jurisdiction. Fed. R. Civ. P. 12(h)(3). Because the question of standing is a threshold jurisdictional issue, federal courts have a duty to examine it. D'Lil v. Best Western Encina Lodge & Suites, 538 F.3d 1031, 1035 (9th Cir. 2008).

After carefully reviewing plaintiff's complaint and conducting an evidentiary hearing on May 22, 2017, the court concludes that plaintiff lacks standing to bring his claims and/or that the claims fail to state a claim on which relief may be granted and are patently frivolous. Therefore, the court recommends that the action be dismissed with prejudice.

BACKGROUND[2]

In 1999, plaintiff, as an unmarried man, bought the subject real property located at 1124 Hawthorne Loop in Roseville, California, signing a note and deed of trust to obtain a mortgage loan. After plaintiff married Heather Summerby in December 2001, the loan was refinanced by virtue of the operative November 1, 2002 adjustable rate note for an amount of $306,000.00 borrowed from Option One Mortgage Corporation, and Summerby was added to the title of the property. It is undisputed that both plaintiff and Summerby, as a married couple, executed the

---

[2] The background facts are primarily taken from the parties' briefs submitted prior to the evidentiary hearing and are largely undisputed, unless otherwise noted. (ECF Nos. 41, 43.)

2

November 1, 2002 deed of trust and its associated documents, such as the adjustable rate rider. However, the parties dispute whether the note itself was signed only by Summerby, or by both plaintiff and Summerby, and thus whether plaintiff himself is an obligor on the note. In any event, plaintiff contends that he, and not Summerby, subsequently made the vast majority of payments on the loan. In November 2008, after plaintiff and Summerby had divorced, Summerby transferred her interest in the property to plaintiff by a quit claim deed. It is undisputed, at least for purposes of these proceedings, that solely Mr. Deck presently holds title to the property.

According to defendants' evidentiary hearing brief, the loan went into default around October 2011, and as of July 14, 2016, the unpaid balance was $412,527.74 with total arrearages of $150,666.37. (See ECF No. 41 at 7.) However, in plaintiff's complaint and evidentiary hearing brief, plaintiff contended that he paid off the loan in April 2012, and is thus entitled to cancellation of the note and quiet title. (See ECF No. 1 at 26-27, 33-37; ECF No. 43 at 9.)[3]

Although defendants have commenced foreclosure proceedings, a foreclosure sale has been postponed multiple times due to plaintiff's two prior state court lawsuits and bankruptcy case. On November 14, 2014, plaintiff filed a suit against defendants in the Placer County Superior Court (Case No. SCV0035443). (ECF No. 9-2.)[4] In the course of that case, plaintiff produced numerous documents in response to defendants' document requests and plaintiff's deposition was also taken. That case was ultimately voluntarily dismissed without prejudice in early 2016. Later in 2016, plaintiff filed another lawsuit against defendants in the Placer County Superior Court (Case No. SCV0037916). At a July 21, 2016 hearing in that case, the court denied plaintiff's request for a preliminary injunction, reasoning that plaintiff had not shown that he is a borrower on the note or that he has paid off the total outstanding amount on the loan. (ECF No. 9-4 at 4-8.)[5] After the preliminary injunction was denied, plaintiff filed a motion for

---

[3] As discussed below, plaintiff's contentions in that regard changed at the evidentiary hearing.

[4] The court may take judicial notice of court filings and other matters of public record. See Reyn's Pasta Bella, LLC v. Visa USA, Inc., 442 F.3d 741, 746 n.6 (9th Cir. 2006).

[5] The court takes judicial notice of the state court's decision only for the purpose of reflecting that such a decision was issued. This court does not adopt the state court's decision or reasoning, and

3

reconsideration of the denial based on the alleged discovery of new evidence, which was ultimately denied. (Id. at 24-25.) The 2016 state court case remains active. Additionally, on July 25, 2016, plaintiff filed a bankruptcy petition in the United States Bankruptcy Court for the Eastern District of California, which remains active. (See Case No. 16-bk-24854.)

Thereafter, on February 2, 2017, plaintiff filed the instant federal lawsuit. (ECF No. 1.)

PROCEDURAL HISTORY OF THIS CASE

After the case was filed, the assigned district judge, Judge England, initially denied plaintiff's motion for a temporary restraining order ("TRO"), but subsequently granted plaintiff's amended motion for a TRO based on the allegations in plaintiff's submission to provide all parties an opportunity to be heard prior to any trustee's sale of the property. (ECF Nos. 3-7.) Along with the TRO, the court issued an order to show cause why a preliminary injunction should not issue. (ECF No. 7.) Defendants ultimately filed a response to the order to show cause, and plaintiff filed a reply brief. (ECF Nos. 9, 13.)

Subsequently, by minute order on February 22, 2017, and in a reasoned decision on February 27, 2017, the district judge denied plaintiff's request for a preliminary injunction. (ECF Nos. 15, 17.) The district judge observed:

> Specifically, the thrust of Plaintiff's claims are that Defendants have improperly initiated foreclosure proceedings, but Plaintiff has failed to establish that he is a "borrower" under the loan and therefore has failed to show that he has standing to bring the present lawsuit. Due to his lack of standing, Plaintiff cannot show that he is reasonably likely to succeed on the merits, nor can he even raise serious questions as to the merits, of any of his claims.

(ECF No. 17 at 5.)[6]

As such, on March 2, 2017, the undersigned issued an order to show cause why the action should not be dismissed for lack of standing, an impediment to the court's jurisdiction. (ECF No.

---

instead prepares its own independent findings and recommendations in this federal case.

[6] The district judge's findings were made for purposes of ruling on the request for a preliminary injunction. Again, the court references those findings solely for purposes of tracing the procedural history of this case, and does not merely adopt them for purposes of recommending dismissal. Instead, the court independently issues its own findings and recommendations after the evidentiary hearing and based on the record as a whole.

4

18.) On March 16, 2017, plaintiff filed a response to the order to show cause, and on March 24, 2017, defendants filed a reply to plaintiff's response. (ECF Nos. 23, 31.) After reviewing the parties' filings, the court found that making a determination regarding the issue of standing in this case required the court to resolve issues of credibility and/or disputed material facts, and that an evidentiary hearing was therefore necessary. (ECF No. 32.) See, e.g., Hohlbein v. Hospitality Ventures LLC, 248 Fed. App'x 804, 806 n.2 (9th Cir. Sep. 20, 2007) (unpublished); Cholakyan v. Mercedes-Benz USA, LLC, 2012 WL 12861143, at *24 (C.D. Cal. Jan. 12, 2012). More specifically, plaintiff produced a copy of the note with his signature on it, whereas the version offered by defendants only bore Summerby's signature. The parties also appeared to dispute whether the loan was in default or paid off.

Consequently, on April 5, 2017, the court set an evidentiary hearing for May 22, 2017, strictly limited to the following two issues: (a) whether plaintiff signed the November 1, 2002 note and is thus a borrower for purposes of the loan at issue, or whether plaintiff has otherwise assumed the loan; and (b) regardless of whether plaintiff is a borrower or has assumed the loan, whether plaintiff has paid off the loan in its entirety. (ECF No. 35.)[7] Subsequently, the parties filed a joint list of witnesses and exhibits (ECF No. 42), along with pre-hearing briefs. (ECF Nos. 41, 43.)

At the May 22, 2017 evidentiary hearing, plaintiff appeared representing himself, and attorneys Gabriel Ozel and Robert Norman appeared on behalf of defendants. (ECF No. 45.) The court entertained the presentation of both documentary evidence[8] and live witness testimony,[9] as discussed below. (Id.; see also Transcript of Evidentiary Hearing, ECF No. 48 ["Tr."].)[10]

---

[7] For the reasons discussed in the court's May 4, 2017 order (ECF No. 40), the court denied plaintiff's April 27, 2017 request to continue the evidentiary hearing. (ECF No. 39.)

[8] The following exhibits were admitted at the evidentiary hearing: plaintiff's exhibits 1, 2, 3, 4, 5, 7, 8, 10, 11, 12, 13, 14, 15, 19, 20, 21, and 22, as well as defendants' exhibits 1, 3, 4, 5, 6, 7, 8, 10, 22, 23, and 34.

[9] Both plaintiff himself and a third party witness, notary Michelle Barnes, testified.

[10] On May 19, 2017, the Friday before the evidentiary hearing on Monday May 22, 2017, plaintiff filed certain evidentiary objections. (ECF No. 46.) Those objections had not yet been docketed

ANALYSIS

Based on the court's record, including the evidence developed at the evidentiary hearing, the court proceeds to address plaintiff's claims separately below.

<u>Claims under the California Homeowner's Bill of Rights</u>

Only borrowers have standing to assert claims for violation of the California Homeowner's Bill of Rights. See <u>Green v. Central Mortgage Co.</u>, 2015 WL 5157479, at *4 (N.D. Cal. Sept. 2, 2015) (collecting case authorities). Therefore, to demonstrate that he is an obligor on the loan and thus has standing to prosecute such claims, plaintiff has the burden to show by a preponderance of the evidence that he either (a) signed the November 1, 2002 note at the loan's origination, or (b) subsequently assumed the loan. See <u>In re Exxon Valdez</u>, 270 F.3d 1215, 1232 (9th Cir. 2001) ("The standard of proof generally applied in federal civil cases is preponderance of evidence."); <u>Holbein</u>, 248 Fed. App'x at 806 ("We note, however, that because the evidentiary burden to demonstrate standing remains on [the plaintiff], the district court may revisit the issue of standing in an evidentiary hearing….").

At the evidentiary hearing, plaintiff did not present any evidence that he had assumed the loan. Instead, plaintiff emphatically claimed that he had signed the note at the loan's origination on November 1, 2002, offering into evidence a version of the note bearing his signature. (Pl's Ex. 12.) Plaintiff acknowledged his prior testimony from the state court deposition, in which he effectively conceded that he did not sign the note, but testified that he subsequently discovered a version of the note bearing his signature. Plaintiff essentially contends that defendants fabricated the version of the note with only Summerby's signature, and deceived him at his state court deposition by showing him the allegedly fabricated note. According to plaintiff, his subsequent discovery of the note with his signature backs up his contention that he had been a borrower on

---

at the start of the evidentiary hearing, but plaintiff brought it to the court's attention. As an initial matter, plaintiff's evidentiary objections were untimely and unauthorized, because the court specifically directed the parties to address any evidentiary disputes in the parties' joint list of witnesses/exhibits and pre-hearing briefs. (<u>See</u> ECF No. 35.) Nevertheless, the court indicated that it would rule, and did in fact rule, on any objections asserted as to a particular item of evidence as it was offered in the course of the evidentiary hearing. Thus, any evidentiary objections not raised and resolved on the record at the evidentiary hearing are denied as moot.

the loan since its origination.  For the reasons discussed below, the court finds plaintiff's testimony, as well as his "discovered" version of the note, not credible.

As an initial matter, with respect to plaintiff's version of the note, the document itself raises significant concerns.  Although Summerby's signature appears on a signature line above her printed name, plaintiff's name is curiously not printed below his signature. (Tr. 121-22; Pl's Ex. 12.)  This at least plausibly suggests that the note was prepared by the lender contemplating a signature by Summerby only, and not by plaintiff.  However, plaintiff's version of the note is even more troubling in light of plaintiff's own testimony that Summerby had already executed the note before plaintiff arrived to sign the escrow documents, and that plaintiff then signed the original note on the same page that already contained Summerby's original signature. (Tr. at 33-34, 118.)  At the hearing, defendants produced what credibly appeared to be the original wet ink November 1, 2002 note, which the court and plaintiff examined, and a color copy of which was introduced as Defendants' Exhibit 1. (Tr. 106-10; Defs' Ex. 1.)  That note contained only Summerby's signature, with no signature by plaintiff, and the allonge attached to the note identified the "borrowers" as "Heather Summerby." (Def's Ex. 1.)  Upon further questioning, plaintiff could not explain, beyond mere speculation, how the original wet ink note could only contain Summerby's signature when plaintiff testified that he had put his signature on the same page of the original note as Summerby's original signature. (Tr. 118-21.)

Furthermore, the circumstances of plaintiff's "discovery" of his version of the note are highly suspect.  In the 2014 state court action, plaintiff, then represented by counsel, produced about 2000 pages of documents in response to document requests, including copies of the note signed only by Summerby, after plaintiff and his attorneys purportedly did an exhaustive search of plaintiff's files. (Tr. 43-44, 95-96, 98-103, 117; Defs' Ex. 23.)  Also, plaintiff's own handwritten notes indicated that although some of the loan documents in his possession, such as the deed of trust and adjustable rate rider, were signed by both plaintiff and Summerby, the loan application and note were signed only by Summerby. (Tr. 96-98, 117; Defs' Ex. 22.)  Then, at some point in 2016, plaintiff allegedly "discovered" a version of the note bearing his signature. (Tr. 41.)  Even though he testified that he found that copy in subpoenaed documents that had been

7

in his possession since 2006, plaintiff was unable to articulate why it was not produced in discovery in the 2014 state court action. (Tr. 41-46.) Tellingly, this alleged "discovery" in 2016 took place after the state court in the 2016 action denied plaintiff's request for a preliminary injunction, precisely because it found that plaintiff was not a borrower on the note.[11]

Additionally, plaintiff himself in numerous communications appeared to acknowledge that he was not a signatory to the November 1, 2002 note:

- In a fax sent by plaintiff on December 3, 2004, plaintiff wrote: "I am requesting a copy of the loan docs for loan #...under Heather Summerby's name. She is my wife and I am on the deed and title of the property but not on the note." (Tr. 62-63; Defs' Ex. 3.)
- In a fax sent by plaintiff on January 12, 2012, plaintiff stated that he was not on the new loan after the refinancing. (Tr. 63-64; Defs. Ex. 6.)
- In a July 16, 2014 letter to Ocwen Loan Servicing, plaintiff stated: "I cannot purchase a Homeowner's Insurance Policy at 'any rate'...reasonable or not, because Summerby alone is on the NOTE….and I am NOT." (Tr. 67-69; Defs' Ex. 7 at 4.)
- In a September 20, 2014 letter to Ocwen Loan Servicing, plaintiff referred to himself as a "Non-Obligated Mortgagor." (Tr. 77-78; Defs' Ex. 8 at 2.)
- In an October 2014 complaint to the Consumer Financial Protection Bureau, plaintiff stated that "[t]hey left me off the Note and added only Heather Summerby…." (Tr. 84-87, Defs' Ex. 10.)

At the hearing, plaintiff suggested that those prior concessions were only made because defendants purportedly misled him by claiming that he did not sign the note, especially since he could not locate the version with his signature until 2016. However, the court also finds that

---

[11] Plaintiff did not specify exactly when in 2016 he purportedly discovered the version of the note bearing his signature. However, that purported discovery served as the basis of his state court motion for reconsideration, which was filed after the July 21, 2016 hearing at which the state court had denied his request for a preliminary injunction. (ECF No. 9-4 at 24-25; Tr. 43.) That sequence of events reasonably suggests that plaintiff's version of the note was "discovered" at some point after the July 21, 2016 hearing.

8

testimony not believable. Even if plaintiff could not locate a copy of the note with his signature until 2016, he was present at escrow and obviously knows whether or not he signed the note. If he indeed signed the note, one would have expected plaintiff to clearly and directly insist as much in communications with the lender; not make concessions to the contrary, as he did in the several communications cited above. (Tr. 70-75, 78-82, 87-90.)[12] Plaintiff also makes much of the fact that an attorney he hired for a few months in 2004, Lawrence Ring, wrote Option One Mortgage Corporation a letter on September 9, 2004, which referred to plaintiff as a co-borrower with respect to the loan. (Tr. 91-95; Pl's Ex. 8.) However, it is unclear whether Mr. Ring had even had any previous communications with Option One at the time that he wrote the letter, and plaintiff failed to present any previous or subsequent correspondence between Mr. Ring and Option One regarding plaintiff's status as a borrower. As such, the conclusory statement by Mr. Ring that plaintiff was a co-borrower is entitled to little, if any, weight.

In any event, evidence introduced at the evidentiary hearing reveals a potentially convincing explanation for why plaintiff was not on the note. It is undisputed that plaintiff's original loan obtained in 1999 was put in foreclosure status at the time of the refinancing on November 1, 2002. (Tr. 61-62, 135-38; Pl's Ex. 7.)[13] In a May 27, 2008 letter to plaintiff, Option One explained the operative refinancing loan as follows:

> The loan in question funded with Option One on November 7, 2002. Heather Summerby is named as the responsible party on the Note. You and Ms. Summerby appear (as holding a vested interest in the property) on the Mortgage as Husband and Wife as joint tenants. The loan was a refinance cash out transaction with full employment documentation provided by Ms. Summerby. You were not placed on the note because your income was not used to

---

[12] In an April 25, 2013 letter submitted to Ocwen Home Loan Servicing plaintiff at least arguably referred, in an indirect fashion, to having signed the note at the loan's origination: "No one, not even Option One could tell me why I don't appear on the Note, after signing everything in escrow." (Pl's Ex. 19.) However, that communication is clearly outweighed by the several other communications in which plaintiff apparently conceded not being on the note.

[13] Plaintiff contends that the original loan was sold to Chase Bank, and that Chase made various errors, resulting in the allegedly unwarranted default and foreclosure status of the original loan. Nevertheless, whether or not plaintiff was in any way to blame, there is no dispute that the original loan was put in foreclosure status.

9

> qualify for the loan due to the fact your FICO score was below the Option One company required score of 500…The early disclosures dated August 20, 2002, did signify that you and Ms. Summerby were the borrowers. However, due to the discovery of a lesser FICO score it was determined that Ms. Summerby was the best candidate for qualifying for the loan that was being requested. Therefore, Ms. Summerby's name appears alone on many of the final documents. Your name was placed on certain documents for signature purposes as required by state and company policies. The purpose of the loan was to assist you out of an unfortunate foreclosure situation with your existing lender. Option One did make an exception to approve the loan due to your ability to provide documentation of your attempt to resolve the problem with the previous lender.

(Defs' Ex. 5; Tr. 66-67; see also Defs' Ex. 4.[14]) That explanation is consistent with the loan documentation introduced at the hearing. For example, even though the unsigned August 2002 Federal Truth In Lending Disclosure Statement listed the borrowers' names at the top as plaintiff and Heather Summerby, the final signed November 1, 2002 Federal Truth In Lending Disclosure Statement listed the borrower's name at the top as only Heather Summerby. (Compare Pl's Exs. 10 and 11.) Furthermore, although plaintiff, as Summerby's spouse with an interest in the property, signed some of the loan documents, such as the deed of trust, the adjustable rate rider (an attachment to the deed of trust), a waiver of the 3-day right to rescind, and the Federal Truth In Lending Disclosure Statement (Pl's Exs. 11, 13, 14, and 15), plaintiff did not sign the Instructions to Closing Agent (identifying the borrower as only Heather Summerby), Limited Power of Attorney (again identifying the borrower as only Heather Summerby), the Borrower Affidavit (again identifying the borrower as only Heather Summerby), or (if the original wet ink note produced by defendants is believed) the note. (Pl's Exs. 4, 21, 22; Defs' Ex. 1.)[15]

---

[14] In Defendants' Exhibit 4, a June 9, 2006 letter from Option One to plaintiff, Option One wrote: "A review of the Note indicates that 'Heather Summerby' is responsible for remitting the monthly mortgage payments, until the loan is paid in full. If you wish to add your name to the Note, the loan need [sic] to be refinanced." (Defs' Ex. 4.)

[15] To be sure, some of the documents that plaintiff signed, such as the deed of trust, identify both plaintiff and Summerby as borrowers below their signatures. (See, e.g. Pl's Ex. 13.) Giving plaintiff every benefit of the doubt, it is understandable that such a pre-printed designation on the form could be potentially confusing. Nevertheless, regardless of any poor or inartful form drafting, the overwhelming weight of evidence shows that plaintiff was not a borrower for purposes of the refinanced loan and did not sign the note.

Moreover, at the hearing, plaintiff himself offered a December 3, 2015 declaration by Summerby, wherein she states that she was the only person who signed the note and continues to be the only person liable for the loan. (Tr. 151-52; Pl's Ex. 20.) Defendants also introduced another declaration by Summerby, dated May 14, 2017, again affirming that she was the only person who signed the note and continues to be the only person liable for the loan. (Defs' Ex. 34.)[16] The court is certainly cognizant that Summerby is plaintiff's ex-wife, that aspects of their relationship and ultimate divorce appear to have been less than amicable, and that Summerby herself indicates that she has no interest in curing the loan's default or preserving the property. Nevertheless, although Summerby may have no love lost for plaintiff, her declarations appear entirely consistent with the weight of the evidence and thus are deemed credible.

Additionally, plaintiff offered the July 28, 2016 letter of notary Michelle Barnes, which states:

> To whom it may concern:
>
> I Michelle Barnes, the Notary that signed Mr. Vernon Deck back on November 2, 2002, certify that the documents Notarized were the Deed of Trust & Adjustable Rate Rider and a Grant Deed.
>
> Mr. Vernon Deck thought at that time that because he was signing these documents, that he was also the borrower on this loan. It was never explained to him by his loan officer or lender that he was a non-borrowing spouse.
>
> I as the Notary am a mutual third party, and I only Notarize the documents, I do not explain the content.

(Pl's Ex. 5.) At the hearing, Ms. Barnes testified that plaintiff came to her office, asked her to write the letter, and specifically requested her to add the second full paragraph; she felt pressured into writing the letter, because plaintiff was taking up her work time. (Tr. 203-12.)[17]

---

[16] At the hearing, the court overruled plaintiff's hearsay objection with respect to the admission of Summerby's May 14, 2017 declaration, because plaintiff waived any such objection by himself previously offering Summerby's substantively similar December 3, 2015 declaration. Additionally, even if not considered for its truth, the May 14, 2017 declaration illustrates that Summerby continues to consistently assert that she was the only person who signed the note, even after plaintiff's alleged 2016 discovery of a version bearing his signature. (See Tr. 166-71.)

[17] At the hearing, plaintiff suggested that the second paragraph of Ms. Barnes' declaration

11

1    Finally, in addition to the specific evidence discussed above, the court generally found
2    plaintiff's demeanor and testimony at the hearing to be less than credible.  On several occasions,
3    plaintiff could not adequately explain his rationale or actions, and instead feigned confusion or
4    resorted to frivolous contentions.  By way of example, when asked whether he recognized
5    Summerby's signature (which appears as "HSummerby") on defendants' copy of the wet ink note
6    (Defs' Ex. 1), plaintiff indicated: "I don't know.  Maybe it's Henry Summerby or Harry
7    Summerby or Helen Summerby."  (Tr. 147.)  He then nonetheless conceded that he was married
8    to Summerby for an extended period of time and believed it was her signature.  (Id.)  Plaintiff
9    also continued to argue that he was a borrower on the loan because he holds title to the property,
10   but then inconsistently stated that, if the roles were reversed, Summerby would not be obligated
11   on a mortgage loan simply because she was on the deed and a co-owner of the property; one
12   would have to look at the applicable loan documents.  (Tr. 185-87.)

13   Consequently, in light of the above, the court finds plaintiff's testimony, and his alleged
14   2016 "discovery" of a note that he purportedly signed in 2002 not credible.  The court is not
15   insensitive to the fact that a *pro se* litigant may have been confused by the nature of the
16   refinancing and his status as a borrower, especially given the references to "borrower" found in
17   some of the escrow documents that plaintiff signed and the fact that plaintiff himself had been
18   making most of the payments on the loan.  However, plaintiff does not come to this court as a
19   good faith *pro se* plaintiff who merely misunderstood a loan transaction.  The court finds that
20   plaintiff was well aware of his non-borrower status and standing problems from the state court
21   litigation, and then entirely crossed the line by essentially perjuring himself and creating a
22   fraudulent document to attempt to overcome his standing problems.  Such conduct is offensive to
23   this court and our system of justice, and may even subject plaintiff to criminal liability, an issue
24   as to which the court makes no decision here.

25   ───────────────────────────────────────────────

26   amounts to speculation by Ms. Barnes and that he did not ask her to write it.  However, upon
     further questioning by the court, plaintiff admitted that he had read the letter before he left Ms.
27   Barnes's office, and did not ask Ms. Barnes to correct the second paragraph.  (Tr. 207-12.)
     Again, if plaintiff truly disagreed with the statements made in the second paragraph, one would
28   have expected plaintiff to speak up and insist that any misstatements be corrected.

Therefore, the court finds that plaintiff did not sign the November 1, 2002 note at the loan's origination, is not a borrower for purposes of the loan at issue, and thus has failed to show by a preponderance of the evidence that he has standing to bring his claims under the California Homeowner's Bill of Rights.

Claim for Fraudulent Misrepresentation

In support of his fraudulent misrepresentation claim, plaintiff primarily alleges that, in July 2012, he was contacted by an individual named Nanlab, an agent of Wells Fargo, who told plaintiff that if he ceased making payments on the loan for 90 days, the bank would lower his monthly payment. Plaintiff allegedly followed those instructions, but then learned in November 2013 that the bank had no record of any such arrangements and that foreclosure proceedings were underway. Additionally, plaintiff appears to allege fraud with respect to the origination of the loan leading him to believe that he was a borrower on the loan, and that defendants fraudulently failed to cancel the note after it was purportedly paid off in April 2012. (See ECF No. 1 at 24-26.)

To bring a fraud claim against defendants based on alleged misrepresentations made in the course of foreclosure proceedings, plaintiff must show that he is a borrower on the loan. See Green, 2015 WL 5157479, at *4 ("Courts thus have dismissed foreclosure-based claims – like Ms. Green's negligent misrepresentation, fraud, wrongful foreclosure, UCL, cancellation of deed, and declaratory relief claims – by persons who were not parties to mortgage loans.") (collecting case authorities). For the reasons discussed above, plaintiff has not shown by a preponderance of the evidence that he is a borrower on the loan, and therefore lacks standing to pursue a claim for fraudulent misrepresentation in this case.

Moreover, even if plaintiff had standing, his fraudulent misrepresentation claim would be barred by the applicable three-year statute of limitations. See Cal. Civ. Proc. Code § 338(d).[18] To the extent that plaintiff's fraud claim stems from his interaction with Nanlab in July 2012 that

---

[18] Section 338(d) applies to "[a]n action for relief on the ground of fraud or mistake. The cause of action in that case is not deemed to have accrued until the discovery, by the aggrieved party, of the facts constituting the fraud or mistake." Cal. Civ. Proc. Code § 338(d).

13

led him to mistakenly default on the loan, any such claim accrued in November 2013 when plaintiff discovered that Nanlab's alleged statements were false. (ECF No. 1 at 25.) In any event, it is unclear how Nanlab's statements caused any default by plaintiff, given plaintiff's own testimony that he last made any payment on the loan in April 2012, about three months before Nanlab allegedly told plaintiff to stop making payments for 90 days. (Tr. 16-17, 224.) Additionally, to the extent plaintiff's fraud claim stems from any alleged fraud that occurred during the origination of the loan leading plaintiff to believe he is a borrower on the note, the statute of limitations began to run in 2004 when plaintiff discovered that defendants claimed he was not on the note. (Tr. 37, 46; Defs' Ex. 3.) Furthermore, to the extent that plaintiff claims that defendants fraudulently failed to cancel the note after it was purportedly paid off in April 2012, plaintiff discovered such alleged fraud no later than November 2013 when plaintiff learned that the bank considered the loan to be in default. Moreover, as discussed below, plaintiff has since conceded that the loan is not paid off.

Therefore, plaintiff lacks standing to bring his fraudulent misrepresentation claim, and even if he had standing, the claim is barred by the applicable statute of limitations.

<u>Claims for Quiet Title and Declaratory Judgment</u>

By virtue of his quiet title and declaratory judgment claims, plaintiff essentially seeks a declaration that the note has been paid and is therefore cancelled, and that title to the property is vested in plaintiff without any further encumbrances. (ECF No. 1 at 27.)

Even setting aside any issues with respect to plaintiff's standing, plaintiff's claims for quiet title and declaratory judgment are not viable, because he has not shown by a preponderance of the evidence that he paid off the note in full. See <u>Deerinck v. Heritage Plaza Mortgage Inc.</u>, 2012 WL 1085520, at *9 (E.D. Cal. Mar. 30, 2012) (quoting <u>Briosos v. Wells Fargo Bank</u>, 737 F. Supp. 2d 1018, 1032 (N.D. Cal. 2010)) ("[U]nder California law, it is well-settled that a mortgagor cannot quiet his title against the mortgagee without paying the debt secured."). At the evidentiary hearing, defendants made an offer of proof that, according to their records, the payoff amount on the loan, as of May 18, 2017, was $425,955.69. (Tr. 226 [referencing Defs' Ex. 21].) Even though plaintiff contended in his complaint and other pre-hearing filings that the loan was

14

paid off in April 2012, the court gives no weight to such conclusory contentions, especially in light of plaintiff's generally poor credibility. In any event, the court here need not make a determination regarding the exact amount still owing on the loan. At the evidentiary hearing, plaintiff admitted that the loan has not been paid off in full, and that he has not made any payments on the loan, insurance, or property taxes related to the property since April 2012. (Tr. 16-17, 216-27.)[19] Moreover, plaintiff has not offered any evidence suggesting that he could tender the full outstanding amount on the loan; nor does his request to proceed *in forma pauperis* suggest that he could. (See ECF No. 2.)

Therefore, even assuming *arguendo* that plaintiff had standing to bring claims for quiet title and declaratory judgment, such claims are not viable and plainly frivolous.

Fair Debt Collection Practices Act Claim

Plaintiff's claim under the FDCPA itself contains no specific factual allegations, but merely incorporates by reference the entire complaint regarding the making of the loan and defendants' attempted foreclosure on the property. (ECF No. 1 at 28.) As an initial matter, plaintiff does not allege any facts suggesting that defendants are debt collectors for purposes of the FDCPA. But even if he did, "the law is well-settled…that creditors, mortgagors, and mortgage servicing companies are not debt collectors and are statutorily exempt from liability under the [FDCPA]." Camillo v. Washington Mut. Bank, F.A., 2009 WL 3614793, at *10 (E.D. Cal. Oct. 27, 2009). Moreover, "the law is clear that foreclosing on a property pursuant to a deed of trust is not a debt collection within the meaning of the RFDCPA or the [FDCPA]." Id. As such, even assuming *arguendo* that plaintiff has standing to bring a FDCPA claim, that claim is not viable.

---

[19] Plaintiff attempted to explain his earlier contentions that the loan had been paid off by pointing to an alleged telephonic communication in April 2013 with the above-referenced individual from Wells Fargo named Nanlab, where Nanlab allegedly told plaintiff that he had overpaid on the loan. However, in that same communication, according to plaintiff, Nanlab requested a hardship letter from plaintiff in an attempt to avoid foreclosure proceedings. (See Tr. at 216-25; Pl's Ex. 19.) Like so many of plaintiff's other concocted stories, this tale again makes little sense, because it strains credulity that a bank representative would inform plaintiff that he overpaid on a loan, but then simultaneously request a hardship letter to avoid foreclosure on an outstanding loan.

CONCLUSION

For the reasons discussed above, the court finds that all of plaintiff's claims are subject to dismissal, because plaintiff lacks standing to bring those claims and/or they are patently frivolous. Therefore, the court finds that granting leave to amend in this case would be futile. See Cahill v. Liberty Mut. Ins. Co., 80 F.3d 336, 339 (9th Cir. 1996).

Accordingly, IT IS HEREBY RECOMMENDED that:

1. The action be DISMISSED WITH PREJUDICE in its entirety.
2. Plaintiff's request to proceed *in forma pauperis* in this court (ECF No. 2), as well as his requests for court approval of a notice of pendency of action (ECF Nos. 19, 20, 21, 37, and 38) be DENIED AS MOOT.
3. The Clerk of Court be directed to serve a courtesy copy of this order on the United States Bankruptcy Court for the Eastern District of California, referencing Case No. 16-bk-24854.
4. The Clerk of Court be directed to serve a courtesy copy of this order on the Placer County Superior Court, referencing Case No. SCV0037916.
5. The Clerk of Court be directed to close this case.

In light of those recommendations, IT IS ALSO HEREBY ORDERED that all pleading, discovery, and motion practice in this case are STAYED pending resolution of these findings and recommendations. With the exception of objections to the findings and recommendations and non-frivolous motions for emergency relief, the court will not entertain or respond to motions and other filings until the findings and recommendations are resolved.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within fourteen (14) days after being served with these findings and recommendations, any party[20] may file written objections with the court and serve a copy on all parties. Such a document should be captioned

---

[20] Although defendants have only specially appeared in the action at this juncture, they are nonetheless invited to file as a specially appearing party any objections, or a reply to any objections, in accordance with the deadlines set in this order.

"Objections to Magistrate Judge's Findings and Recommendations." Any reply to the objections shall be served on all parties and filed with the court within fourteen (14) days after service of the objections. The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. <u>Turner v. Duncan</u>, 158 F.3d 449, 455 (9th Cir. 1998); <u>Martinez v. Ylst</u>, 951 F.2d 1153, 1156-57 (9th Cir. 1991).

IT IS SO ORDERED AND RECOMMENDED.

Dated: June 9, 2017

_____
KENDALL J. NEWMAN
UNITED STATES MAGISTRATE JUDGE